UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

LIONEL WHITE,                        )
                                     )
                    Plaintiff,       )
                                     )       Case No. 17-cv-02877
          v.                         )
                                     )       Judge Sharon Johnson Coleman
CITY OF CHICAGO, et al.,             )
                                     )
                    Defendant.       )

## MEMORANDUM AND ORDER

Plaintiff Lionel White ("Plaintiff") brings this suit against: (1) former Chicago Police Department officers, Sergeant Ronald Watts ("Watts") and Alvin Jones ("Jones"); (2) six other officers in Watts' unit, Elsworth Smith, Jr., Kallatt Mohammed, Manual Leano, Brian Bolton, Robert Gonzalez, and Douglas Nichols (collectively, "Watts Unit"); (3) former Superintendent of the Chicago Police Department Phillip Cline ("Cline"); (4) former head of the Chicago Police Internal Affairs Unit Debra Kirby ("Kirby"); and (5) the City of Chicago ("City") for violation of his Fourth and Fourteenth Amendment rights and Malicious Prosecution in violation of state law.  Defendants now move this Court to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6).  For the reasons set forth below, this Court denies Defendants' Motion.

**Background**

The following allegations are taken as true for the purpose of ruling on this Motion. Plaintiff lived at the Ida B. Wells Homes, a public housing project on the south side of Chicago.  On April 24, 2006, Plaintiff was home alone when Watts and Jones knocked on his door.  After Plaintiff opened the door, Jones struck him in the face.  The two officers then searched Plaintiff's apartment for drugs with no warrant.  When Plaintiff ran to the window to scream for help, the officers grabbed him and beat him.  After a fruitless search, Jones and Watts arrested Plaintiff and took him

1

to the police precinct. Jones justified the arrest by claiming that he saw Plaintiff in a public area of his apartment complex holding a plastic bag containing drugs and that, when he approached Plaintiff and announced himself, Plaintiff ran from him. Jones claimed that he chased Plaintiff, a fight ensued, injuring Plaintiff in the process. After the "scuffle" Jones claimed he recovered bags of heroin from Plaintiff's person.

The Watts Unit made official reports and statements to prosecutors that corroborated Jones's story. As a result of the fabricated story, Plaintiff was charged with multiple offenses.

Even though Plaintiff maintained his innocence throughout the initial proceedings, on June 26, 2006, he accepted a guilty plea offer in exchange for a five-year sentence. He feared that he would not be able to disprove the concocted story and would face a life sentence. During his plea colloquy, Plaintiff repeatedly stated that he was beaten, wrongfully arrested, and was only admitting guilt because he was scared he would not be able to overcome the concocted story of the officers. (Dkt. 37). Plaintiff was convicted, sentenced, and held in continuous custody for two years from the point of his arrest on April 24, 2006, until his release on April 22, 2008.

Prior to Plaintiff's arrest, the Chicago Police Department received numerous complaints that Watts, Jones, and the Watts Unit had engaged in robbery, extortion, the use of excessive force, planting evidence, fabricating evidence, and manufacturing false charges against other people at the Ida B. Wells Homes. These complaints were corroborated by witness testimony. Plaintiff maintains that the supervisors Kirby and Cline, as well the Internal Affairs Division, knew about the alleged misconduct of the Watts Unit, but they did nothing to intervene. Plaintiff also contends that the City of Chicago was aware of the police abuses that occurred amongst the Department, and cites the following as support: (1) Mayor Rahm Emanuel's speech on December 15, 2015 about the impact of the "code of silence" on perpetuating extreme acts of abuse; (2) the 2016 Police Accountability Task Force report on Chicago Police Department detailing how the rules and labor agreements were

institutionalizing and reinforcing the "code of silence"; and (3) the 2017 Department of Justice report recognizing the impact of the "code of silence" on policing.

When Plaintiff learned that the misconduct of the Watts Unit was being investigated by the US Attorney's Office, he filed a motion to vacate his conviction in State Court. On December 14, 2016, the Circuit Court of Cook County granted Plaintiff's motion, and he received a Certificate of Innocence on January 5, 2017. The certificate noted that, "[t]he Petitioner did not by his own conduct voluntarily cause or bring about his conviction." (Dkt. 40). On April 4, 2017, Plaintiff filed the present action.

### Legal Standard

A motion to dismiss pursuant to rule 12(b)(6) challenges the legal sufficiency of the complaint, not its merits. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). To survive the dismissal, the complaint must provide the defendants with fair notice of the claim's basis and must be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009).

### Discussion

Section 1983 provides an avenue for vindicating federal rights impaired by state actors, but since it does not create any substantive rights in and of itself, a plaintiff must first identify the underlying constitutional right at issue. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997); *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Accordingly Plaintiff raises Fourth and Fourteenth Amendment claims against the arresting officers, the other members of Watt's team, and the City of Chicago. Plaintiff also brought a Malicious Prosecution claim against under Illinois law. Defendants jointly move to dismiss Plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6).

3

Defendants also seek to dismiss the Watts Unit, Kirby, Cline, and the City as defendants on the basis that Plaintiff failed to implicate their liability for the alleged constitutional violations adequately.

*Fourteenth Amendment Due Process Claim*

Plaintiff's Fourteenth Amendment Due Process claim alleges that the Watts Unit's fabricated evidence caused him to be wrongfully convicted and detained for two-years. Defendants move to dismiss this claim for two reasons. First, they contend that states have exclusive jurisdiction over malicious prosecution claims and that this Court is therefore foreclosed from hearing Fourteenth Amendment claims premised on malicious prosecution.[1] Second, they argue that even Plaintiff's Fourteenth Amendment claim is actionable, it is defeated by Plaintiff's guilty plea.

It is well-established that a violation of state law does not preclude a finding that the federal Constitution has also been violated. *Armstrong v. Daily*, 786 F.3d 529, 542 (7th Cir. 2015). Since there is no constitutional tort for malicious prosecution and federal courts do not simply adjudicate state tort law, a successful federal claim predicated on an unlawful conviction must identify a constitutional right. *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018). When a criminal defendant alleges that he was harmed by a police or prosecutor's fabricated evidence, he can raise a due process claim. *See Petty v. City of Chi.*, 754 F.3d 416, 422 (7th Cir. 2014)(recognizing that manufactured evidence is capable of violating a defendant's due process rights).

Defendants rely on *Newsome v. McCabe* and its progeny to support their position that the Fourteenth Amendment Due Process claim is preempted by the state remedy of malicious prosecution. *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001); *Llovet v. City of Chicago*, 761 F.3d

---

[1] To the extent that Defendants are challenging this Court's jurisdiction to hear Plaintiffs state law malicious prosecution claim, this Court has supplemental jurisdiction to hear that claim. 28 U.S.C.S. § 1367; *see Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("A district court also has supplemental jurisdiction over any claim that is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.").

759, 764 (7th Cir. 2014); *Alexander v. McKinney*, 692 F. 3d 553 (7th Cir. 2012); *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003). However, the Seventh Circuit has recently held that the Fourteenth Amendment is an appropriate avenue for pursuing claims premised on fabricated evidence which results in a wrongful conviction. *Avery v. City of Milwaukee*, 847 F.3d 433, 441 (7th Cir. 2017). Accordingly, regardless of the availability of a state-law remedy for malicious prosecution, a plaintiff is not barred from raising a federal due process claim alleging that fabricated evidence lead to a wrongful conviction. *Id.*; *see also Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015)(clarifying that fabricated evidence can form the basis of a due process claim and is not reserved exclusively for a state law malicious prosecution claim). Although Defendants acknowledge that *Newsome* cannot be reconciled with *Avery*, they fail to explain why a seventeen-year-old opinion should supersede a more analogous case decided last year. The Court therefore concludes that *Avery* governs, and accordingly holds that the availability of the malicious prosecution state tort does not preclude a federal constitutional claim based on fabricated evidence.

Plaintiff alleged that Watts and Jones fabricated the seizure of heroin, the Watts Unit propagated the false story in furtherance of his prosecution, and that he eventually acquiesced to a guilty plea as a result of the fabricated evidence. The facts alleged support a claim that the fabricated evidence was the driving force behind Plaintiff's deprivation of the opportunity to be fairly tried and his liberty. These allegations sufficiently support a Fourteenth Amendment Due Process violation claim.

Defendants alternatively argue that Plaintiff's Fourteenth Amendment Due Process claim should be dismissed because Plaintiff's "voluntary" plea breaks the causal link between the fabricated evidence and Plaintiff's conviction, thereby undermining the wrongfulness of his conviction. The Seventh Circuit has consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence "is later used to deprive

5

the defendant of [his] liberty *in some way*." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (emphasis added) (quoting *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012). How the fabricated evidence came into play is not as critical to establish the constitutional violation as the fact that the fabricated evidence was a direct cause of a Defendants' conviction. *Whitlock*, 682 F.3d at 582. In light of Plaintiff's consistent claims during the plea colloquy that he felt compelled to admit guilt because of the fabricated evidence, the connection between the fabricated evidence and Plaintiff's conviction is clear.

Defendants assert that because Plaintiff's guilty plea was knowing and voluntary, it cannot pass the *Tollett* test. In *Tollett*, the Court held that when a defendant pleads guilty he may not later raise claims about deprivations prior to his plea. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608 (1973) Regardless of the plea, however, "[a plaintiff] may . . . attack the voluntary and intelligent character of the guilty plea." *Id.*

Taken together, the casual chain from fabricated evidence to conviction can only be broken by a voluntary guilty plea. *Hurlow v. United States*, 726 F.3d 958, 966 (7th Circ. 2013). In an analogous case, *Saunders v. City of Chicago,* the Court found that it was the officer's fabrication, and not the plea, that caused the injury because that fabrication "influence[d] the criminal Defendants' decision to take the plea after taking stock of the lack of exculpatory evidence in his possession." No. 12-cv-09158, 2014 U.S. Dist. LEXIS 94249, at *21 (N.D. Ill. July 11, 2014)(Dow, J.). Here, Plaintiff's admission on the record makes it clear that the fabricated evidence was the driving force behind his decision to plead guilty, just like in *Saunders*. Further, Plaintiff's "Certificate of Innocence," establishes his legal innocence, which underscores the *involuntariness* of his conviction. (Dkt. 40). Accordingly, the facts do not support a finding that Plaintiff's guilty plea invalidates his Fourteenth Amendment Due Process claim.

6

*Fourth Amendment Claim*

Plaintiff also alleges that the fabricated evidence and wrongful conviction caused him to be unlawfully detained in violation of the Fourth Amendment. Defendants assert that the claim is time-barred because the statute of limitations began to run upon Plaintiff's April 24, 2006, arrest. Plaintiff maintains that his claim was not cognizable until December 14, 2016, when the state court set aside his wrongful conviction.

A claim accrues as soon as a person knows both the fact and the cause of the injury such that a plaintiff can actually bring suit and obtain relief. *See Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095 (2007). The statute of limitations begins to run in an action for false imprisonment when the alleged false imprisonment ends. *Heck v. Humphrey*, 512 U.S. 477, 489-90, 114 S. Ct. 2364, 2372 (1994). Since Section 1983 does not have a statute of limitations, lawsuits brought under it are governed by the statute of limitations for the relevant personal injury tort in the state where the harm occurred. *Wallace,* 549 U.S. at 387; *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016). In Illinois it is two years. 735 ILCS 5/13-202 (providing that "the 2-year period set out in this Section shall be tolled during the time in which the plaintiff is incarcerated, or until criminal prosecution has been finally adjudicated in favor of the above referred plaintiff, whichever is later.").

Defendants cite *Wallace* as support; however, it is distinguishable. The *Wallace* Court found that since the plaintiff's Fourth Amendment claim was based only on his false arrest, not any subsequent unlawful prosecution, the statute of limitations began to run at the start of his criminal proceedings. *Wallace* v, 549 U.S. at 397. The analysis to be applied here is more akin to *Heck v. Humphrey* as Plaintiff's injury is predicated on the same basis. Even though the Supreme Court rejected Heck's claim for a Section 1983 violation based on his unlawful arrest and conviction because his conviction had not yet been overturned, it did recognize that "a §1983 cause of action

7

for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck*, 512 U.S. at 489-90.

Here, Plaintiff's harm continued until his conviction was set aside because prior to that point his conviction was "lawful" and his detention was warranted. He could not properly allege an injury until the conviction was vacated. Consequently, the time for Plaintiff's claim did not begin to toll until the conviction was set aside by the judiciary, and Plaintiff received a pardon. *Moore v. Burge*, 771 F.3d 444, 447 (7th Cir. 2014). Plaintiff's conviction was set aside on December 14, 2016, less than a year before he filed his April 17, 2017, complaint.[2] As the complaint was filed prior to the expiration of the statute of limitations, Defendants' motion to dismiss Plaintiff's Fourth Amendment claim is denied.

*The Watts Unit and Supervisors*

In addition to the two arresting officers, Plaintiff implicates six other officers, the Watts Unit, because they failed to intervene and conspired to violate his constitutional rights. Defendants move to dismiss these officers because they maintain that the Watts Unit did not have the requisite personal involvement in the underlying constitutional deprivations to generate liability.

In order to state a claim for failure to intervene, Plaintiff must demonstrate that Defendants knew there was a constitutional violation, that they had the means to prevent it, and that they failed to do so. *See Hurt v. Wise*, 880 F.3d 831, 842 (7th Cir. 2018); *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). A conspiracy claim for a constitutional violation requires that Defendants agreed to inflict the constitutional harm. *Sow v. Fortville Police Dep't*, 636 F.3d 293, 304-05 (7th Cir. 2011). Such an agreement may be inferred from the circumstances if a reasonable jury could

---

[2] The Supreme Court reviewed the issue of when the statute of limitation tolls in the case of *Manuel v. Joliet* and remanded it to the Seventh Circuit for resolution. 137 S. Ct. 911, 921 (2017). As the matter remains unresolved, this Court relies on current precedent. Further, this Court finds that *Manuel* is factually distinct as the plaintiff's claim in that case was premised on a pre-trial detention.

conclude that a meeting of the minds occurred and that the parties had knowledge of the conspiracy's objective. *Id.* at 305.

In *Hurt v. Wise*, the Seventh Circuit addressed what constitutes a failure to intervene. 880 F.3d 831 (7th Cir. 2018). There, two officers coerced the plaintiffs to confess to murder and arrested them. *Id.* at 841. Following the arrest, three different officers fabricated evidence to corroborate the confessions. *Id.* at 842. Hurt's complaint alleged that each officer knew of the coercion and fabricated evidence and had the ability to prevent or report it, but did not. The court in *Hurt* inferred that because each defendant generated false evidence to bolster the validity of the coerced confessions, they were aware that plaintiffs were unlawfully being detained and prosecuted, but did nothing to prevent it. *Id.* at 843.

Similar to the plaintiffs in *Hurt*, here Plaintiff presents sufficient facts to infer that the Watts Unit conspired to deprive Plaintiff of his freedom. Plaintiff alleges that the Watts Unit offered false reports and statements to prosecutors in furtherance of the initial fabricated story made by Watts and Jones. Even though they knew the story was false, Plaintiff claims the Watts Unit did not intervene by telling the truth to vindicate Plaintiff. Instead, they collaborated and fabricated statements that eventually lead to Plaintiff's plea and conviction. Just as in *Hurt*, that coordination of action suggested sufficient awareness and cooperation between the arresting officers and the Watts Unit.

Taken in a light most favorable to Plaintiff, the allegation of false reporting and failure to prevent his wrongful prosecution constitute a sufficient basis to implicate the Watts Unit in effectuating the constitutional violations against Plaintiff and therefore, the motion to dismiss the claims against the six other officers of the Watts Unit is denied.

Defendants also argue that Plaintiff did not adequately demonstrate that Watt's supervisors, Kirby and Cline, were personal involved in depriving Plaintiff of his constitutional rights. A

supervisor can be deemed personally responsible if he knew about the unlawful conduct and facilitated it, approved it, condoned it, or *turned a blind eye to it. Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012)(quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995))(emphasis added). Supervisors who merely act negligently, failing to detect and prevent a subordinate's misconduct, do not reach the threshold of personal involvement. *See Johnson v. City of Chi.*, No. 15 C 128, 2016 U.S. Dist. LEXIS 130210, at *9 (N.D. Ill. Sep. 23, 2016)(Feinerman, J.)(citing *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997)).

Here, Plaintiff alleged that the Chicago Police Department, its Internal Affairs Department, and Kirby and Cline were aware of prior complaints that the Watts Unit fabricated evidence against people in the Ida B. Wells homes, but did nothing in response. Their inaction in light of the complaints, and their capacity to curb the misconduct, supports Plaintiff's claim that Kirby and Cline could be held personally liable for the violations. *Powell v. Chicago*, No. 17-cv-5156, 2018 U.S. Dist. LEXIS 37966, at *21-22 (N.D. Ill. Mar. 8, 2018) (Blakey, J.)(finding that allegations that supervisors were aware of complaints about police misconduct and did nothing was sufficient to implicate personal liability). Accordingly, this Court denies Defendants' motion to dismiss these Defendants.

*City of Chicago*

Plaintiff contends that the City of Chicago has failed to address the pervasive culture of abuse in the Chicago Police Department that allowed his constitutional rights to be violated. Defendants argue that since all of the claims lack merit, Plaintiff should not be able to bring suit against the City. The Court finds that the City was appropriately named in the Complaint.

As a threshold issue, a successful claim against the City "requires a finding that the individual officer is liable on the underlying substantive claim." *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000). A municipality, such as the City of Chicago, is subject to §1983 liability if one of its policies

10

resulted in a constitutional deprivation. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). This deprivation can be caused by "(1) an express municipal policy; (2) a widespread, though unwritten custom or practice; or (3) a decision by a municipal agent with final policymaking authority." *Kristofek v. Vill. Of Orland Hills*, 832 F.3d 785, 799 (7th Cir. 2016)(quoting *Darchak v. City of Chi. Bd. Of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009). Plaintiff alleges that the widespread custom was the cause of his injury. In a *Monell* claim the unwritten practice in question need not be sanctioned by the body's official decision-making channels, but it must be so widespread and well-settled that it nearly has the "force of law." *Looper Maintenance Serv. v. City of Indianapolis*, 197 F.3d 908, 912 (7th Circ. 1999); *Moore v. City of Chicago*, 126 Fed. Appx. 745, 747 (7th Cir. 2005). It must also produce pervasive misconduct, beyond isolated incidents, that resulted in a deprivation of a plaintiff's rights. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)(quoting *Monell*, 436 U.S. at 690-91). To find municipal liability, policymakers must be aware of the widespread misconduct and fail to take action, such that their indifference becomes acquiesce to the bad acts. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014).

In the instant case, Plaintiff alleged sufficient facts to suggest that constitutional deprivations occurred at the hands of the officers. Plaintiff's allegations of widespread misconduct by the Police Department and willful ignorance of superiors suggest that conduct was pervasive enough to constitute a de facto policy of ignoring misconduct amongst the Chicago Police Department. Additionally, Plaintiff alleges facts that suggest that Chicago's Mayor and other entities monitoring the Chicago Police Department recognized a "code of silence" amongst the Department that permitted egregious abuses and violations to go unaddressed. As no policy changes were made in response to the problem of abuses and silence within the Department, the facts provide support for the City to be implicated in these allegations under *Monell* liability. The claim against the city is sufficient.

**Conclusion**

For the above reasons, Defendants' Motion to Dismiss Plaintiff's Complaint is denied.

IT IS SO ORDERED.

ENTERED:                    SHARON JOHNSON COLEMAN
                           United States District Court Judge

Dated: March 31, 2018