## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LIONETTA WHITE, as special administrator for Lionel White, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 17 C 2877 |
| v. | ) ) | |
| | ) | Judge Sara L. Ellis |
| CITY OF CHICAGO, et al., | ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

Plaintiff Lionel White Senior, now deceased and represented by his estate, claims that a group of Chicago Police Department ("CPD") officers, including Defendant Kallatt Mohammed, framed him for unlawful drug possession that subsequently led to a wrongful conviction. After White served two years in prison, the Circuit Court of Cook County granted him a Certificate of Innocence. Shortly thereafter, on April 17, 2017, White sued a group of CPD officers, including Mohammed, and the City of Chicago for violating his Fourth and Fourteenth Amendment rights. When Mohammed answered White's complaint on April 21, 2018, he asserted his Fifth Amendment right to not provide self-incriminating testimony due to then-ongoing criminal investigations. Mohammed also asserted his Fifth Amendment right when he answered interrogatories.[1] Then, at his deposition taken on November 15, 2023, Mohammed withdrew his Fifth Amendment privilege and gave answers to questions that were previously out-of-bounds due to his invocation of the privilege. Now, Mohammed moves for leave to file an amended

---

[1] A different court managed discovery in this case as part of *In re: Watts Coordinated Pretrial Proceedings*, No. 19 C 1717 (N.D. Ill.). On January 20, 2023, the parties to the Watts Coordinated Proceedings agreed to stay discovery in all but nineteen "test cases." *See id.*, Doc. 395. The parties selected this case as one of the test cases and set the close of discovery for December 18, 2023. The Court set this case for trial on September 15, 2025.

answer to White's complaint withdrawing his Fifth Amendment assertions. Because the Court finds that granting leave to amend would burden White with undeserved strategic disadvantages, and because the motion has an air of bad faith, the Court denies it.

## BACKGROUND

Mohammed was a CPD Officer in former CPD Sergeant Ronald Watts' tactical unit, which patrolled the Ida B. Wells Homes in the 2000s. White lived in the Ida B. Wells Homes in April 2006 when CPD officers entered his home and arrested him for several serious drug offenses—all of them fabricated. Knowing he could receive a life sentence if convicted, White accepted a plea offer for a five-year sentence. White served two years in prison before the Circuit Court of Cook County granted his motion to vacate the conviction. The Circuit Court of Cook County subsequently granted White a Certificate of Innocence in 2017. White sued shortly thereafter.

During the pendency of this case, several government agencies opened investigations into Watts' tactical unit and the officers belonging to it, including Mohammed. These included the Civilian Office of Police Accountability ("COPA") and the Federal Bureau of Investigation ("FBI"). Several Assistant State's Attorneys and Assistant United States Attorneys interviewed Mohammed as part of their investigations.

Mohammed answered White's complaint on April 21, 2018. Mohammed asserted his Fifth Amendment privilege with respect to twenty allegations of White's complaint. Mohammed also asserted his Fifth Amendment privilege in several of his answers to White's interrogatories. On November 15, 2023, one month before fact discovery closed, White deposed Mohammed. At the deposition, Mohammed again asserted his Fifth Amendment privilege and refused to answer some of White's questions. However, Mohammed selectively answered some questions about

White's allegations and events that occurred contemporaneously to White's arrest. When he did answer, Mohammed stated that he did not recall his involvement in arresting White, nor any act he might have taken regarding White's arrest, even when presented with documentary evidence including a picture of White and a report listing him as a responding officer. Seven months later, and five months after the close of fact discovery, Mohammed filed the present motion for leave to file an amended answer to White's complaint to conform to the evidence and withdraw his Fifth Amendment invocation.

## LEGAL STANDARD

A defendant "may amend [his] pleading only with the opposing party's written consent or the court's leave," which should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend is not mandatory. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009); *see also Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005) (noting that despite the liberal nature of Rule 15(a), "leave to amend is not automatically granted"). District courts "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the [non-moving party], or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). Ultimately, "the decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002).

## ANALYSIS

A person may assert their Fifth Amendment right against compulsory self-incrimination in any civil, criminal, administrative, judicial, investigatory, or adjudicatory proceeding. *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). A person properly invokes this right in a civil

3

proceeding such as this one where there is "some tendency to subject the person to criminal liability." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663–64 (7th Cir. 2002). The central standard for the privilege's application is whether the claimant is confronted by substantial and "real," and not merely trifling or imaginary, hazards of incrimination. *Rogers v. United States*, 340 U.S. 367, 374 (1951). Here, White seemingly argues that Mohammed invoked the Fifth Amendment in bad faith when he answered White's complaint and responded to interrogatories in 2018 because Mohammed did not provide supporting case law and did not identify a good faith reason for asserting his right at the time he invoked it.

However, the specter of future prosecution against Mohammed has existed throughout the course of this litigation. COPA investigated Mohammed, and FBI agents, Assistant State's Attorneys, and Assistant United States Attorneys all interviewed him, with potential criminal charges lurking in the shadows. White does not argue that Mohammed fabricated these investigations, nor does he submit that the threat of future prosecution was not real when Mohammed initially answered White's complaint and responded to interrogatories. As such, the Court finds that Mohammed properly invoked his Fifth Amendment right at the commencement of these proceedings. *See Rogers*, 340 U.S. at 374.

But the parties also disagree whether Mohammed can properly withdraw his Fifth Amendment assertion and scrub his answer of its traces at this late stage. Initially, Mohammed must make this withdrawal in good faith. *See In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2022 WL 3139570, at *1 (N.D. Ill. Aug. 5, 2022) (withdrawal of Fifth Amendment right not permitted if the litigant does so to "abuse, manipulate or gain an unfair strategic advantage over opposing parties" (quoting *United States v. Certain Real Prop. & Premises Known as 4003–4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 84 (2d Cir. 1995))). Other factors include

timeliness, because allowing a defendant to invoke the Fifth Amendment during discovery before subsequently withdrawing the privilege just prior to trial would be "tantamount to allowing the defendant to avoid discovery altogether." *Harris v. City of Chicago,* 266 F.3d 750, 753–54 (7th Cir. 2001). The ultimate determination on withdrawal depends on the Court's weighing of "the relevant factors and acts . . . to accommodate both a litigant's valid Fifth Amendment interests and the opposing parties' needs." *Evans v. City of Chicago*, 513 F.3d 735, 743 (7th Cir. 2008) (quoting *Certain Real Prop.*, 55 F.3d at 84); *see also Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 547 (5th Cir. 2012) ("The timing and circumstances under which a litigant withdraws the privilege are relevant factors in considering whether a litigant is attempting to abuse or gain some unfair advantage.").

Withdrawals of the Fifth Amendment privilege are particularly suspect when the moving party failed to move to amend their answer shortly after discovering new facts or waiting until after discovery closed. *See Liebhart v. SPX Corp*., 917 F.3d 952, 965 (7th Cir. 2019) (upholding denial of leave to amend where party waited four months from discovery of new facts to move to amend); *Park v. City of Chicago*, 297 F.3d 606, 613 (7th Cir. 2002) (upholding denial of leave to amend where party waited six months to move to amend). Although "[d]elay on its own is usually not reason enough for a court to deny a motion to amend. . . . 'the longer the delay, the greater the presumption against granting leave to amend.'" *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (quoting *King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994)).

Here, Mohammed partially withdrew his Fifth Amendment invocation in November 2023, one month before the close of fact discovery, by answering questions during his deposition over which he had previously invoked the privilege. Mohammed moved to amend his answer in accordance with that withdrawal in June 2024—more than seven months after his deposition and

more than five months after discovery closed.  This lengthy delay creates a "presumption against granting leave to amend."  *Id.*  Moreover, by attempting to withdraw the assertion at such a late stage in the case, Mohammad in effect asks the Court to saddle White with critical strategic disadvantages.  After proceeding for six years around Mohammed's Fifth Amendment invocation, White now faces the prospect of needing to completely retool his litigation strategy.  *See Certain Real Prop.*, 55 F.3d at 84 (court should deny leave to withdraw Fifth Amendment privilege when moving party does so to "abuse, manipulate or gain an unfair strategic advantage over opposing parties").

Mohammed contends that the inactive status of the federal and state criminal investigations—and the corresponding impact on applicable statutes of limitations—justified him withdrawing his Fifth Amendment invocation for the first time in November 2023.  However, Mohammed's counsel's subjective determination that prosecution became unlikely for the first time in November 2023 does not establish a good faith basis for attempting to amend: "requesting leave late in the process [does] not justify granting leave so late in the game."  *Hukic*, 588 F.3d at 432.  Moreover, even if counsel's evaluation of the status of the governments' potential prosecutions was accurate, it does not explain away the lengthy period between when Mohammed attempted to withdraw the privilege and when he filed the present motion.  Both the late timing of Mohammed's abandonment of his Fifth Amendment privilege and inexplicably delayed motion for leave to file an amended answer suggest procedural gamesmanship and bad faith.  *See Moreno*, 667 F.3d at 547 ("The timing and circumstances under which a litigant withdraws the privilege are relevant factors in considering whether a litigant is attempting to abuse or gain some unfair advantage.").

The circumstances surrounding Mohammed's attempted withdrawal likewise smack of bad faith. The information that Mohammed initially refused to provide in his 2018 answer and interrogatories that he subsequently offered during his 2023 deposition was that he did not recall any interactions with White, including White's arrest. *See, e.g.*, Doc. 178-3 at 69:12–14 ("Q: Have you ever been involved in arresting [White]? A: "I don't remember. Don't recall."); *id.* at 70:12–18 (testifying that he did not recognize White's image or arresting him); *id.* at 71:5–14 (testifying that he did not recall White's arrest after reviewing police report detailing White's arrest). Although it is plausible that Mohammed truthfully does not remember any of the facts surrounding White's arrest, it likewise seems plausible that Mohammed is attempting to swap his Fifth Amendment invocation—which carries with it potential adverse jury inferences, *see Daniels v. Pipefitter'' Ass'n Local Union No. 597*, 983 F.2d 800, 802 (7th Cir. 1993) ("[T]he inference against a witness that may be drawn from the invocation of the Fifth Amendment is permissive.")—with the less-damaging assertions that he does not recall the core events giving rise to this litigation. *See Evans*, 523 F.3d at 743 (court must weigh "the relevant factors and acts" when evaluating motion to withdraw).

Mohammed's reliance on *Evans* to argue that he can properly withdraw the Fifth Amendment privilege at this stage in the case is unavailing. In *Evans*, the Seventh Circuit found that the district judge "reasonably could have concluded that the [defendants] were not 'gaming' the system but rather were concerned about the special prosecutor's investigation . . . [, which] indicate[d] a good-faith invocation of the Fifth Amendment." *Id.* But this bears on whether an officer *initially invoked* the Fifth Amendment in good faith, not whether he made a subsequent withdrawal in similar fashion. Moreover, although the officers in *Evans* who withdrew their Fifth Amendment invocations did so in anticipation of a special prosecutor's report, the district

court there perplexingly allowed them to withdraw the privilege despite finding prejudice to the plaintiff. *Id.* at 739. Here, Mohammed does not assert that any potentially vindicating report is forthcoming, and this Court will not overlook the prejudice that White would suffer if it allowed Mohammed to present a revisionist history of this case to the jury.

In sum, Mohammed placed White at a tactical disadvantage by maintaining his Fifth Amendment invocation for years, only to withdraw it and attempt to erase its traces from the record to prevent a jury from hearing of his initial decision to stay silent. Although Mohammed was entitled to do so based on his legitimate fear of prosecution, the way he tried to withdraw his privilege made a mangled mess of procedural fairness. By withdrawing the privilege at his deposition—where he failed to substantively answer the relevant questions—and then filing this motion several months after discovery closed, Mohammed "encourages gamesmanship, puts the district court in a difficult situation, and undercuts the goal of timely and fair discovery." *Id.* at 752 (Williams, J., dissenting). If Mohammed's timeline as to when he realized that his criminal liability dissipated is as neat as he says, he will have no problem rectifying the appearance of bad faith should he testify at trial. However, absent any strong indication that such a revelation truly arose for the first time in the final weeks of a years-long fact discovery period, the Court declines to shield Mohammed from impeachment and questioning regarding his former silence.

Weighing "the relevant factors and acts," the Court finds that it would be improper to grant Mohammed leave to amend his answer. *Id.* at 743.

## CONCLUSION

For the foregoing reasons, the Court denies Mohammed's motion to amend his answer [176].

Dated: November 18, 2024

_____
SARA L. ELLIS
United States District Judge